May it please the court, counsel, Dan Maloney, Federal Defender's Office, Reno, Nevada, on behalf of Appellant Chen Chang Liu. With the court's permission, I would like to reserve two minutes for rebuttal. You may. Lift the mic just a little. Thanks. Yeah, I have kind of a soft voice, so I'll try and speak up. So if you can't hear me, please let me know. The first issue for the court's decision in this case is whether the conspiracy in count one of the second superseding indictment was a single conspiracy or whether it was multiple conspiracies charged in a single count. If it was a single conspiracy, the speedy trial clock under 18 U.S. Code 3161 had run. If it was multiples, our position is that if Mr. Li's substantial rights were violated by going to trial on a duplicitous count. Mr. Maloney, let me ask you if, for purposes of my hypothetical, assume that the Los Angeles indictment was the one that had been superseded once it became clear to Secret Service, Customs, and whoever else was investigating this very sophisticated international counterfeiting case that this was a much broader operation than officers had first thought. Would there have been any problem with the government adding Ms. Li as a co-conspirator and then proceeding to trial on the second superseding indictment in Los Angeles? In Los Angeles? Yes. In Los Angeles, I would say no. Okay. So then the question, it seems to me, and I can't find any case law on this, is whether or not we can tack time on to the Los Angeles case based on the events as they unfolded in Nevada when it became clear that the conspiracy had reached Las Vegas. And, I mean, I'm not real sure how to answer that. I don't know the answer either. I'm hoping you can answer it. Yeah, and from our perspective, perhaps, I mean, this may be a little bit illuminative. Perhaps if they had charged it as a separate count, we wouldn't have the second problem, the duplicitous count problem. Well, I guess I'm assuming, and maybe I should have stated that for purposes of my hypothetical, that I'm assuming for purposes of analyzing the speedy trial issue that it's one overarching conspiracy, but the full scope and extent of the conspiracy did not become apparent to the government until the arrests in Las Vegas and all the events that unfolded after the Los Angeles case. And that's basically the government case for the one conspiracy. It's overarching, multiple parties. Our point is that if it is one conspiracy, it is the same conspiracy. Our point is that there is no real excluded middle in there. Well, the problem is the second superseding indictment adds different charges. We've got conspiracy to make and smuggle and distribute and pass counterfeit $100 bills. We've got substantive counts of importation, manufacture, distribution, and passing. But some of the charges were included and then excluded and then re-added as the investigation unfolded. Doesn't that implicate the provisions in the Speedy Trial Act that say that the time is told while that's happening? Our position is the time is told between the dismissal of the California indictment, which happened in March of 31, and the reintroduction of the California allegations into the Nevada case, which happened April 2nd is when the indictment was filed. So the time... Your answer is begging the question I'm asking, which is what prevents us from counting the time in Nevada as if it were part and parcel of the case that was originally charged in Los Angeles before the government learned of the full scope and extent of the operation? And really, the answer to that question, I rely upon the magistrate's reporting recommendation and the trial court's order in this case. The trial court's order in this case treated those so that, as I spoke, so that only the time in between was excluded in the trial court's order. I understand what they did, but that doesn't help answer the legal question, which I think we reviewed in OVA, do we not? Yeah, and I'm struggling a little bit with the... And you can kind of see, I mean, was it one, was it separate? And if it was one, then the allegations... It was always there, the allegations of Mr. Schwenke, the allegations of Ms. Lu. Those all could have been brought in California at that time. And if it's separate, the California allegations should have been carved out and should not have been brought. And I think we're all understanding that part. The part is how do we analyze it, and we analyzed it the way the trial court analyzed it, and did the trial court get it correct. And that's basically where I go with that. And I can't be much more helpful to the court on that than those basic points. What was the effect of adding an additional defendant to your Speedy Trial Act argument? Adding the additional defendant, if it was the same conspiracy, then our point is that it didn't change the analysis. It was still the same conspiracy. Okay. So what case do you rely upon to support your argument that adding an additional defendant to the same conspiracy does not restart the Speedy Trial Act clock? What case says that? I don't have a case that says that. Again, we rely upon the magistrate's order, and the case that we rely upon for the single analysis and the Speedy Trial analysis is mostly Arnold. But doesn't the statute address that? I think the answer to Judge Rawlinson's question is it does restart it if a new conspirator is added, if it's the same conspiracy. If it's the same conspiracy, yes. Right. So your argument is it was the same conspiracy. So if a new defendant is added to the same conspiracy, doesn't that defeat your Speedy Trial Act argument? And that – and personally, I think there was two or three. Legally. Two or three conspiracies. But legally, yes, if it is the same conspiracy and the Speedy Trial clock had not gone forward. What do we make of the fact that the government then dismissed out this additional defendant? Are they playing games to try to change the timing on the Speedy Trial Act? I don't think there's any evidence that they were trying to change the Speedy Trial clock, but there was a little bit of that going on. Initially, what happened is it was charged as a conspiracy with defendant and co-defendant, his wife, Min Liu. And then it went to trial in January. At that time, additional information from Mr. Schwenke was presented. At that time, that case was mistried. And that case was just a substantive passing counterfeit currency charge. After that case was mistried, the government came back and added the California allegations. And if the government had not added the California allegations, if they had just added the Min Liu allegations, if they had just added the Schwenke allegations, we wouldn't be here. The gist of our complaint is reintroducing the California allegations. But I think I heard you say to Judge Fletcher you're not alleging bad faith on the part of the government, or are you? I'm not making a bad faith argument, and I don't believe a bad faith argument was made below no, Your Honor. But isn't that relevant to our analysis of a Speedy Trial violation? If we find there was no bad faith, that's a fact that helps the government in the analysis. If there was no bad faith, yeah, then the Speedy Trial analysis, that would be a point in the government's favor. That's correct. I'm already running into it, but I just want to make the one other point that if, as the government argues, that if this was the same conspiracy, then what should have happened is that that time should have counted at least from the time Min Liu was added in. And when you have these facts that the Court has here, the magistrate judge and the district court judge made a specific ruling. There was 21 times left. The time had run, and the Court still needs to deal with those specific factual rulings. Thank you, Mr. Maloney. We'll hear from Ms. Olson. Good morning. May it please the Court. Good morning, Counsel. Elizabeth Olson on behalf of the United States. The very unusual procedural history of this case raises some novel and unresolved and, that the defendant would like this Court to consider and resolve. But, in fact, the Court really doesn't need to reach any of those questions, because we have decades of Supreme Court law and precedent in this Court that explains that even if the California Speedy Trial clock carried over into the Nevada case, the addition of Min Liu as a co-defendant would have restarted that clock at 70 days anyway. If that's the same conspiracy. Yes. Yes. And that's what I'm saying. If the Speedy. So what I'm saying is this Court doesn't have to decide whether the Speedy Trial clock carried over or not, because even if it did carry over, it would have been restarted at 70 days when Min Liu was added as a new co-defendant. Now, the question that Judge Fletcher asked about playing games, and I will say there was no allegation of bad faith, and I don't believe the record supports any allegation of bad faith on the part of the government. In Henderson, where the Supreme Court set up this rule, as this Court recognized in King, in Henderson the Supreme Court left open the possibility that in a case where there was bad faith on the part of the government, where they were adding and deleting new co-defendants to play with the Speedy Trial clock, that general rule might not apply. But what we have here is, I mean, the government had no reason to know that Ms. Liu was a co-conspirator and co-defendant in all of this until she was arrested with $30,000 in counterfeit $100 bills in Las Vegas in July of 2007. And at that point, she was added, you know, she was indicted. And what happened, I mean, they were arrested July 30th at the casino, passing these $100 bills in the slot machines, and were indicted within a couple of days. And I believe what happened is, you know, after that indictment, when the assistant U.S. attorney started investigating and discovered that Mr. Liu was already under indictment in California for this importation scheme, and then over time, the parties came to realize, or the government came to realize that this was all part and parcel of the same overarching conspiracy. Now, in the second superseding indictment in Nevada, the government explained that, in the indictment, explained that the passing of the counterfeit bills in the slot machines in Las Vegas was an integral aspect of this overarching conspiracy. Because as you recall from the record, the conspirators told the undercover agent, as they're trying to convince him to buy these counterfeit $100 bills, and Mr. Schwenke, as they're trying to convince him to fly to Hong Kong to pick up these counterfeit $100 bills, part of their selling point is, these bills are so high quality that you can take them to Las Vegas and use them in the slot machines. I mean, that was part of the selling point. And not only that, both the undercover agent and Mr. Schwenke were instructed to facilitate all of this, right? With the understanding, and Mr. Wu told the undercover agent specifically, that Lou, you could pay him in counterfeit bills because he goes to Las Vegas, and he can launder them in the slot machines and get actual money for that. That's pretty unusual in my experience. You don't usually pay off the co-conspirators with the funding money.  I mean, these were extremely high quality counterfeit bills that could be used. And I'm told, I think it came out at trial, that the Secret Service says, you know, slot machines in Las Vegas are the gold standard of counterfeit bills, because if something is that good, that the slot machines will take it. Why did they dismiss Ms. Lou out of this? Because she seemed to be involved. Well, boy, we sure thought so. During the trial, pre-trial and during the trial, there was a significant, we believe, a significant amount of evidence against Mrs. Lou that the district court excluded. And obviously, we disagreed with those decisions to exclude that evidence. But I think that... You couldn't get in the fact that she actually was found in the car with $30,000. Yeah, yeah. I'm trying to remember exactly. She had a lot of money. She had $20,000 or $30,000 in genuine currency in her purse, and then there was these three envelopes with $10,000 in each of these envelopes of counterfeit money in a bag in the car that she had packed that had her handwriting on them. If the money was so good, how did the co-conspirators keep track of which is funding and which is the district court? Well, and, in fact, when the undercover agent was paying off Lou, you know, after he had gotten the counterfeit money and he was supposed to pay off Lou in counterfeit money, well, you know, the Secret Service has this rule. The government doesn't hand out counterfeit money. I mean, we just don't. So even as part of this undercover operation, the undercover agent gave Mr. Lou genuine currency. Without realizing it. No, without Mr. Lou realizing that it was genuine currency. Thinking that it was counterfeit. Right. And the undercover agent said, boy, these are really good bills. Thanks a lot. You know, you can take these to Vegas and pass them on. But the Secret Service, even in the course of an undercover operation, wouldn't let the agent give counterfeit money out to someone. Counsel, couldn't the allegations from the Las Vegas activities have been added in with the conspiracy charge in California? I think they could have. And this goes back to the first, I think it was the first question that Judge Talman asked, which is, if, you know, the other thing that the government could have done, rather than drop the California indictment and wrap the whole thing up in Nevada, the government could have simply superseded in California and added Ms. Lou as a co-defendant. And the additional charges. And the additional objects. They wouldn't have been able to charge the substantive passing counts, though, because they wouldn't have menu. Because those happened in Nevada. I guess, yes, that would be true. You could charge her with conspiracy. Yes. And the substantive counts could be overtaxed in furtherance of that conspiracy. Yes. But you couldn't tag her for the substantive crime. I think what happened, and the court can take notice because I believe it's in the record in the other case on the docket. There were four defendants in that other case. One of them died. One of them pleaded guilty. I believe one of them absconded. And so the only one left in the California case was Mr. Lou. And so given that the evidence on the substantive charge, the conspiracy happened in both places. The evidence of the substantive charge was in Las Vegas. The witnesses, the casino employees, and all of those folks were in Las Vegas. I assume that's why we made the decision to wrap the whole thing up once we  We didn't want it to be, you know, all sort of up both ends of a much larger conspiracy than the government had realized when they indicted it in Los Angeles. The other thing that I just wanted to say, and I did send a letter about this specific unanimity instruction, the fact that the model jury instruction, the that the court instruct the jury that they must be unanimous with respect to which overt act was committed. That instruction, we don't believe that that is actually a requirement under Shad v. Arizona. We don't think that's a requirement. And this court recently in the HOFA's decision found that in attempt crimes, although the specific unanimity is part of the model jury instruction in attempt crimes, it is not actually a requirement that the jurors be unanimous on that. So our view is as long as all 12 jurors were satisfied that a conspirator had committed an overt act, that was all that was necessary. Although in this case, of course, all 12 jurors agreed unanimously that Mr. Kline had passed and held the counterfeit bills in Las Vegas, and that was one of the overt acts in the indictment. So that would end the analysis? It would. That would be a harmlessness. I think the argument that the defense is making is that the passing and keeping of the bills in Vegas is not part of the conspiracy in L.A. But as a practical matter, it would have simplified matters if there had been a government's position that the jurors simply need not be unanimous with respect to overt act, notwithstanding that language in the model jury instruction, that as this Court said, as the Supreme Court said in Shad v. Arizona, so long as all 12 jurors agree that the crime was committed, they don't need to agree on the means. I'm sorry. Go ahead. Is it the practice of the U.S. Attorney's Office not to include a unanimity instruction in conspiracy cases? You know, I don't know the general practice, and I haven't looked at our ‑‑ I think, you know, the model instruction includes it, and so I think we probably usually do, but it's ‑‑ it is our position that it's not required, unless you've got a case with tricky multiplicity, duplicity issues, as the ‑‑ as this Court explained in Hocus. Unless the Court has other questions. Thank you. It's a long time since we've had a speedy trial act case. We used to have them by the dozen. Yeah, it's been a long time since I've done one, too. It's true. Mr. Maloney, you've got a little more than a minute left. A couple of points that I wanted to make. Min Liu was added as a co‑defendant in July of 2007. Her speedy trial motion includes allegations that the time had run, just as to her account, within the Las Vegas case. Those allegations and that issue was never reached by the trial court because of his determination that they were separate conspiracies. So that may also factor into that analysis. As to the specific unanimity, part of our argument definitely is the specific unanimity. The other part of our argument is under Fuchs. In Fuchs, the court ruled as a matter of plain air that if you can't tell if the jurors may have considered an act as an overt act that was outside of the statute of limitations, that that's reversible. In our case, they could have been unanimous on the California allegations, and our position is that that would still be incorrect because the California allegations should not have been added in. Given their conviction on the substantive passing in 2007 in Las Vegas, which was charged as an overt act, in furtherance of the conspiracy, wouldn't that be harmless error? If the court could find that there was an in furtherance of the conspiracy, if it was a separate conspiracy, the part about the super notes and how good they were was just puffery and selling points, and there was no evidence of any of these bills showing up until about 2007. Thank you very much. The case is submitted. Excellent job on the part of both counsel. Thank you. Tricky little case.
judges: Fletcher B. , Tallman, Rawlinson